# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD LEE MORENCY,

                Petitioner,              Case Number: 04-CV-60203

v.                                   HON. MARIANNE O. BATTANI

JEFFREY WOODS,

                Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Richard Lee Morency has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Mid-Michigan Correctional Facility in St. Louis, Michigan, challenges his convictions for one count of driving with a suspended license and causing death, and three counts of driving with a suspended license and causing serious injury. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from a traffic accident on Marine City Highway in St. Clair County on November 11, 2000. On that date, Petitioner, driving a brown pick-up truck, collided head-on with a white sedan, killing Harold Ray Sharrow, and seriously injuring Suzanne Kaminski, Travis Sharrow, and Michelle Sharrow.

Gregory Nixon testified that on November 11, 2000, he was driving in the

eastbound lane on Marine City Highway.  He noticed a brown pick-up truck in his rear view mirror.  Nixon thought the driver of the pick-up truck wanted to pass him because the driver drifted into the lane for oncoming traffic.  Seconds later, Nixon saw the pick-up truck collide head-on with the white sedan.

Kellie Marsilio testified that she was driving behind the white sedan driven by Harold Sharrow in the westbound lane of Marine City Highway on the day of the accident.  She testified that a brown pick-up truck drove into the westbound lane of traffic and struck the white sedan head-on.

St. Clair County Sheriff's Deputy Thomas Jackson testified that he investigated the accident scene.  He testified that the evidence at the accident scene was consistent with witness accounts of the accident that Petitioner's vehicle drove into the oncoming lane of traffic.

Petitioner testified in his own defense.  He testified that the white sedan entered his lane of traffic.  He stated that he tried to avoid the white vehicle, but was unable to do so.

## II.

Following a jury trial in St. Clair County Circuit Court, Petitioner was convicted of one count of driving with a suspended license and causing death, and three counts of driving with a suspended license and causing serious injury.  On November 19, 2001, he was sentenced as a second habitual offender to 7 to 22½ years imprisonment for the driving with a suspended license and causing death conviction and 3 to 7½ years imprisonment for each of the driving with a suspended license and causing serious injury

2

convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.    Whether defendant's due process rights were violated where the police destroyed evidence which denied defendant access to potentially exculpatory information.
>
> II.   Whether Judge Kelly reversibly erred by denying Mr. Morency's request for instruction on the lesser included offenses of negligent homicide and gross negligence because the facts adduced at trial would have supported a conviction for those offenses.

The Michigan Court of Appeals affirmed the convictions. People v. Morency, No. 238358 (Mich. Ct. App. May 15, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Morency, 469 Mich. 949 (Mich. 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I.    Petitioner's due process rights were violated where the police destroyed evidence which denied Petitioner access to potentially exculpatory information.
>
> II.   Judge Kelly reversibly erred by denying Petitioner's request for instructions on the lesser included offenses of negligent homicide and gross negligence.

3

## III.

### A.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act, April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).  Additionally, this court must presume the correctness of state court

4

factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* <u>Cremeans v. Chapleau</u>, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." <u>Id</u>. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly. Rather, that application must also be
> unreasonable.

Id. at 410-11.

## B.

In his first claim for habeas corpus relief, Petitioner argues that his right to due process was violated when the police destroyed the two vehicles involved in the crash.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." California v. Trombetta, 467 U.S. 479, 485 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." Id. However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Arizona v. Youngblood, 488 U.S. 51, 56 (1989). The state's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." Trombetta, 467 U.S. at 488 (1984). "To meet this standard . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence

6

by other reasonably available means." Id. at 489.  Further, "unless a criminal defendant

can show bad faith on the part of the police, failure to preserve potentially useful evidence

does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58.

The last state court to issue a reasoned opinion regarding this claim, the Michigan

Court of Appeals, held that Petitioner's due process rights were not violated because the

police failed to preserve the vehicles.  Applying the standard set forth in Youngblood and

Trombetta, the state court held that Petitioner failed to show that the police acted in bad

faith or that the evidence was exculpatory.  The Court of Appeals reasoned:

> Although defendant argues that the evidence in question "was necessary to
> completely exculpate Defendant," he explains neither his failure to take
> advantage of this supposedly vital evidence during the several months when
> it was available, nor precisely how the particular damage to those vehicles,
> as revealed by the wreckage, could have constituted exculpatory evidence.
> Instead, defendant only asserts generally that his theory of the case differed
> from that of the prosecutor, and that examination of the wreckage would
> have supported his version. . . . [D]efendant testified that he did not cause
> the crash in question, maintaining instead that, while he was driving his
> truck, the other car "had come up from the side of the road, from the tree
> line," and struck him on the passenger side of his vehicle.  Perhaps
> defendant wishes to imply that the actual collision damage to the vehicles
> would have tended to show that the Chrysler struck the truck, instead of the
> other way around, but defendant's failure to make this assertion while
> presenting this issue, or any other basis for his argument that the wrecked
> vehicles constituted exculpatory evidence, is fatal to this claim of error. . . .
>
> Further, it is not apparent that any such evidence could fairly be
> characterized as exculpatory. . . . An eyewitness testified that the Chrysler
> was in its own lane when the nearly head-on crash occurred, and had not
> been weaving or otherwise proceeding erratically beforehand.  The
> eyewitness' testimony that the collision took place in the Chrysler's lane
> implicates defendant as the errant driver, . . .
>
> Moreover, a police investigator testified that his findings at the scene

7

comported with the eyewitness' version of events. . . .

From this record, we conclude that defendant has failed to show either that the police acted in bad faith by failing to preserve the wreckage for more than 5½ months, or that the wreckage of the two vehicles constituted exculpatory evidence.  This claim of error must fail.

Morency, slip op. at 2-3.

The Court finds this resolution of Petitioner's claim was neither contrary to nor or an unreasonable application of clearly established federal law.  The Court of Appeals cited applicable Supreme Court precedent, considered the facts in light of Petitioner's claim that the evidence was exculpatory, and supported its conclusion that the vehicles were not exculpatory and that the police did not act in bad faith.  Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous.  Therefore, this Court concludes that the state court of appeals' decision did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to federal habeas relief with respect to this claim.

## C.

In his second claim for habeas corpus relief, Petitioner claims that the trial court erred in denying his request to instruct the jury on the lesser included offenses of negligent homicide and gross negligence.

While the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in non-capital cases. Id. n.14. Habeas relief may only be granted where a state court's decision is "contrary to or involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d). Petitioner cannot show that the state court's failure to instruct on lesser included offenses was contrary to or an unreasonable application of Supreme Court precedent where Supreme Court precedent does not require a lesser included offense instruction in non-capital cases.

## IV.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: February 28, 2006

9